**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JACOB ABRAHAM ROJAS GONZALEZ,** | : | **No. 3:26cv2432** |
| **Petitioner** | : | **(Judge Munley)** |
| **v.** | : | |
| **WARDEN, PIKE COUNTY CORRECTIONAL FACILITY,** | : | |
| **Respondent** | : | |

# MEMORANDUM ORDER

On August 25, 2026, Petitioner Jacob Abraham Rojas Gonzalez filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241.[1] (Doc. 1). Between then and now, Immigration and Customs Enforcement put the petitioner on a plane to Guatemala. (Doc. 15 at 2). Rojas Gonzalez, however, is not subject to a final order of removal. (See Doc. 12-1 (receipt of appeal by the Board of Immigration Appeals)).

As the undisputed facts bear out, the agency eventually returned Rojas Gonzalez to the Pike County Correctional Facility. (Doc. 12 at 2; Doc. 15 at 3–4).

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Rojas Gonzalez filed the instant petition while detained at Pike County Correctional Facility. (Doc. 1 at ECF p. 2). Liberally construed, the petitioner challenges the legality of his continued detention. Id. at ECF pp. 3, 7. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

However, the government failed to respond to Rojas Gonzalez's allegations about what he endured during that process.

Despite the issues inherent in removing Rojas Gonzalez without a final removal order, the petition for writ of habeas corpus really concerns the lawfulness of his continuing detention. And just as the government failed to respond to Rojas Gonzalez's attempted removal allegations, it also failed to provide proof that the petitioner was provided with an individualized custody determination at any point in his detention. Therefore, Rojas Gonzalez's petition for a writ of habeas corpus will be granted for failure to provide an individualized custody determination. He will be released.

**Background**

Rojas Gonzalez is 20 years old. (Doc. 15 at ECF p. 1). He is a native and citizen of Guatemala. (Doc. 7-2 at ECF p. 1). He entered the United States as an unaccompanied minor in 2021 and placed in the care of his mother in the Lehigh Valley after being processed at the Fort Bliss Emergency Intake Site. (Doc. 1-3). His habeas petition highlights that he was only 14 when he entered the United States, and he asserts that "he did not fully understand the immigration consequences of his entry." (Doc. 1 at ECF p. 8).

On July 13, 2026, Rojas Gonzalez was arrested by the Allentown Police Department for driving under the influence, being involved in an accident that

caused property damage, and for driving an unregistered vehicle without a license. (Doc. 7-4 at ECF p. 1). He was released on bail the next day. Id. at ECF p. 2. ICE encountered Rojas Gonzalez while he was jailed in Lehigh County. (Doc. 7-3 at ECF p. 2). After a records check, the department immediately took him into custody on an immigration detainer and a warrant. Id. He was charged with violating 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I). Id.

Rojas Gonzalez's initial habeas petition challenged the legality of continued immigration detention on those facts. (Doc. 1 at ECF p. 3). The circumstances before the court are now very different.

On September 2, 2026, Rojas Gonzalez was ordered removed by an immigration judge. (Doc. 7 at ECF p. 2). But petitioner filed proof that the Department of Justice accepted payment for his appeal to the Board of Immigration Appeals as of September 22, 2026. (Doc. 8-1). The BIA also issued notice that it received his appeal on September 25, 2026. (Doc. 12-1). However, for reasons unexplained, the BIA did not issue the actual notice letter until October 8, 2026. Id.

In October 2026, unknown individuals began filing documents on petitioner's behalf. (Doc. 10, 13). These documents indicated that the government had removed the petitioner to Guatemala while his BIA appeal

remained pending and then returned him to the United States. (Doc. 10, 13). The court issued orders in conjunction with these missives. The first order directed the government to provide a status of Rojas Gonzalez's whereabouts and to state definitively whether it had received an administrative appeal of the petitioner's removal order. (Doc. 11). The government confirmed the BIA appeal. (Doc. 12 at ECF p. 1). The government's status report also stated as follows:

> Petitioner is presently detained. Petitioner is being transferred to the Pike County Correctional Facility (PCCF) from an Immigration and Customs Enforcement (ICE) Processing Center, located in Alexandria, LA. Petitioner will return to PCCF on or about October 21, 2026.
>
> The following is offered as additional context relevant to understanding Petitioner's recent history. Petitioner was transferred from PCCF to an ICE detention facility located in Alexandria, LA, on or about October 7, 2026, for the purpose of effectuating the removal of Petitioner due to his removal order becoming administratively final on or about October 3, 2026. Notice of Petitioner's appeal of the Immigration Judge's detention order was issued on October 8, 2026. . . .Upon receipt of this notice, ICE initiated the Petitioner's return transfer to PCCF. Petitioner is expected to return to PCCF on October 21, 2026, where Petitioner is expected to remain throughout the pendency of his appeal, absent an order to the contrary from this or another court of competent jurisdiction.

Id. at 1–2.

Based on that status report, the court struck the documents filed on Rojas Gonzalez's behalf and authorized the petitioner to supplement his petition

himself. (Doc. 14). The order also authorized a supplemental response from the government. Id.

Thereafter, Rojas Gonzalez supplied a handwritten letter to the court, which was docketed by the Clerk of Court on October 28, 2026. (Doc. 15). He alleges as follows: On October 8, 2026, at approximately 5:00 PM, an ICE agent appeared at Pike CCF with a deportation order. Id. at ECF p. 1. Petitioner advised the ICE agent that he had a pending immigration appeal and a habeas petition. Id. The agent advised that he would "check in the system." Id. As petitioner recounts, "he said that if he found my appeal in the system[,] he would no longer return to look for me to sign [the deportation order.]" Id. The agent did not return.

Rojas Gonzalez's letter states that, after midnight the next day, he was told to pack his things. Id. He was then taken out of his cell at 5:00 AM and transported by bus to an airport approximately three hours away. Id. According to the petitioner, he was flown to Louisiana and transferred to Jackson Parish Correctional Center in Jonesboro where he was housed for five days. Id. One evening, at approximately 6:00 PM, he was transported by bus to the Alexandria Staging Facility, where he was processed for a deportation flight the next morning. Id. According to the timeline set forth in the petitioner's letter, he was

flown to Guatemala on Wednesday, October 14, 2026 or Thursday, October 15, 2026. Id.

When the plane landed in Guatemala, an ICE agent stopped the petitioner at the front of the plane and told him he could not get off the aircraft. Id. at 3. The ICE agent told the petitioner, "I'm very sorry. We made a mistake." Id. (citation modified). According to the petitioner, this ICE agent was aware of his appeal and habeas corpus petition. Id.

Rojas Gonzalez letter recounts that he was then returned to the Alexandria Staging Facility. Id. According to the petitioner, he was there for six days "with the same clothes and sometimes they gave food and sometimes not[.]" Id. Petitioner was then returned to Pennsylvania and was housed at the Moshannon Valley Processing Center for one day. Id. Thereafter, ICE returned the petitioner to Pike CCF. Id.

Per a court order, the government had approximately nine days to supplement its prior filings. (See Doc. 14). On November 6, 2026, it submitted the following response:

> 1) Petitioner's appeal with the Board of Immigration Appeals remains pending.
>
> 2) Petitioner is presently detained at Pike County Correctional Facility.

(Doc. 17).

Given this response, there is no need for a hearing or other judicial inquest. The court deems all of allegations in Rojas Gonzalez's letter to be admitted. From those deemed admissions, and the failure by the government to demonstrate that Rojas Gonzalez received an individualized custody determination, the court is compelled to release the petitioner.

**Analysis**

Rojas Gonzalez's handwritten letter about the attempted removal does not advance any new legal arguments. Liberally construed, it only updates the facts concerning his detention. Thus, the only legal issue to resolve is whether his continued immigration detention without a bond hearing violates the Constitution or laws of the United States.

Although the government now indicates that 8 U.S.C. § 1226(a) applies to Rojas Gonzalez's detention, (Doc. 7 at ECF pp. 1, 3), that was not the case in July 2026 when ICE detained the petitioner. At that time, the government applied 8 U.S.C. § 1225(b)(2)(A) to individuals like Rojas Gonzalez. Buele Morocho v. Warden Phila. FDC, 189 F.4th 287, 292 (3d Cir. 2026). Section 1225(b)(2) calls for mandatory detention statute while Section 1226(a) is a discretionary detention statute. Id.

For a noncitizen detained under 8 U.S.C. § 1226(a), federal regulations establish a two-stage custody determination process: an initial DHS custody

decision, 8 C.F.R. §§ 236.1(c)(8), followed by the possibility of immigration judge review, 8 C.F.R. §§ 1003.19, 1236.1(d)(1). In this case, there is distinct mismatch between the § 1226(a) regulatory scheme and the record before the court. There is no indication that Section 1226(a) and its implementing regulations have ever been applied to the petitioner, either initially, after Buele Morocho, or after his two-week odyssey through the actual, physical removal process before the legal removal process ran its course. There also is no indication that Rojas Gonzalez ever received an individualized custody determination at any of those points as contemplated by the regulations.

Given this sparse record, the government is unable to demonstrate that the petitioner's detention resulted from an exercise of discretion. The government is also unable to demonstrate that it attempted to cure any procedural deprivation while this habeas petition was pending over the last 75 days. It is as if the government is saying § 1226(a) applies but is really continuing to apply § 1225(b)(2)(A) to this particular noncitizen. Therefore, on these facts, Rojas Gonzalez's continued detention violates the INA and his due process rights. See Buele Morocho, 189 F.4th at 305. The petition for writ of habeas corpus will be granted.

As for relief, the habeas statutes direct the court to dispose of petitions "as law and justice require." 28 U.S.C. § 2243. The typical habeas remedy for

unlawful executive detention is release. Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted).

From the uncontested facts, law and justice require release in this case. Here, the IJ ordered Rojas Gonzalez's removal. But that is not the end of the process afforded. The BIA is the highest administrative appellate body for immigration matters which exercises appellate jurisdiction under federal regulation. 8 C.F.R. § 1003.1(b). Rojas Gonzalez enjoyed the administrative right to appeal his removal order within 30 days to the BIA which he did in this case. Consequently, his timely appeal to the BIA prevented the order from becoming administratively final. See 8 U.S.C. § 1101(a)(47)(B) (indicating that an "order of deportation" becomes final upon a determination by the BIA affirming the IJ or the expiration of the appeal period, whichever is earlier). By regulation, there is an automatic stay in petitioner's immigration case; that is, "the decision in any proceeding . . . from which an appeal to the [BIA] may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending." 8 C.F.R. § 1003.6(a). According to the record in this case, ICE

violated the finality requirement of 8 U.S.C. § 1101(a)(47)(B) and the automatic stay regulation at 8 C.F.R. § 1003.6(a).[2]

The INA also contains various detention provisions. Congress has directed the executive branch to remove a noncitizen within 90 days when that noncitizen enters the "removal period." 8 U.S.C. § 1231(a)(1)(A). Congress has also expressly defined the "removal period" to contemplate an administrative process and judicial review. 8 U.S.C. § 1231(a)(1)(B). Before the "removal period," a noncitizen may be detained under 8 U.S.C. § 1226(a), subject to an individualized custody determination as discussed above. Based on the record, however, ICE never made that determination and then jumped ahead and flew Rojas Gonzalez to Guatemala. That conduct violated the INA's detention provisions.

The government takes the position that, after all this, relief should take the form of a bond hearing conducted by an immigration judge. (Doc. 7 at ECF p. 3). A belated bond hearing would not cure the above issues. Release is warranted.

[2] Even if the BIA affirms in this case, the process afforded to Rojas Gonzalez's is not over. By federal law, he enjoys 30 days to file a petition for review of an administratively final removal order to the appropriate United States Circuit Court of Appeals. 8 U.S.C. § 1252(b)(1)–(2). He may be removed pending consideration of the PFR unless the appellate court issues a stay. 8 U.S.C. § 1252(b)(3)(B).

Consequently, it is hereby **ORDERED** that:

1) Jacob Abraham Rojas Gonzalez's petition for writ of habeas corpus, (Doc. 1), is **GRANTED**;
2) The government shall immediately release Rojas Gonzalez from its custody;
3) On or before **November 13, 2026**, the government shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Rojas Gonzalez has been released;
4) The government shall release Rojas Gonzalez under the same conditions that existed prior to his ICE detention, including release: (1) in an area where the petitioner resides or where he has access to means of interstate transportation; (2) without the imposition of additional conditions; (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, without limitation to, his cell phone;
5) To ensure that this habeas remedy is effective, the government is precluded from re-arresting petitioner for 7 days;
6) The Clerk of Court is directed to enter judgment in accordance with this memorandum order; and
7) The Clerk of Court is directed to **CLOSE** this case.

Date: 11/10/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**